**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

E. Jeffrey Walsh, SBN 009334
Juliet L. Speisman, SBN 023475
*Attorneys for Biovail Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re Biovail Corporation Securities Litigation | Case No. _____ <br><br> (No. 03 CIV 8917 (RO)) <br><br> **BIOVAIL CORPORATION'S MOTION TO COMPEL PRODUCTION OF ARIZONA RESPONDENTS' SUBPOENA RESPONSES AND SUPPORTING CERTIFICATION OF MOVING COUNSEL** <br><br> (Oral Argument Requested) |

Defendant Biovail Corporation ("Biovail" or "Defendant") moves the Court pursuant to Federal Rules of Civil Procedure 37 and 45 for an Order: (1) compelling James Carr Bettis, Craig Riebe, Zachery Shannon, Donn Vickrey, Scott Vorhauer, Brian Wright, Gradient Analytics, Inc., Helios Equity Fund, and Pinnacle Investment Advisors, LLC (collectively "Respondents") to produce documents responsive to the Subpoena Duces Tecum served during February and March 2006 (the "Arizona Subpoenas"); and (2) awarding Biovail its reasonable attorneys' fees and costs incurred in bringing this

phx-fs1\1541636v14

motion.[1] True and correct copies of the Arizona Subpoenas and accompanying affidavits of service are attached hereto as Exhibit "A."

Biovail supports this Motion with the following Memorandum of Points and Authorities and attached exhibits, and its separately filed certification of moving counsel, all of which are incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

Biovail has served subpoenas in this action by which it seeks materials from non-parties located in Arizona that are relevant to Biovail's defense of a class action pending in the Southern District of New York concerning violations of Section 10(b) of the Securities Exchange Act of 1934, and the regulations promulgated thereunder, entitled *In re Biovail Corporation Securities Litigation*, 03 CIV 8917 (RO) (the "New York Action" or "this action"). A true and correct copy of the complaint filed in the New York Action is attached hereto as Exhibit "B." Biovail through the Arizona Subpoenas seeks information about a massive, illegal scheme to depress the price of Biovail's stock through, *inter alia*, the dissemination of false information about Biovail. The purpose of this scheme was to permit its participants to directly and indirectly profit from short sales of Biovail's stock.[2] Evidence of this scheme, which is in the Respondents' possession

---

[1] Biovail simultaneously submits its Motion for Accelerated Briefing and Oral Argument requesting that its motion be considered on an expedited basis, as the materials requested are relevant to its Opposition to Plaintiffs' Motion for Class Certification which is currently due on July 28, 2006.

[2] "'Short sale' is a term of art for well-established securities trading practices. Briefly stated, a short sale involves a customer who . . . speculates that a particular stock will go down in price and seeks to profit from that drop. The transaction begins with the customer selling stock that she does not own. The customer 'borrows' the stock to be sold, typically from her broker. The broker obtains the stock that it loans to the customer either from its own reserves or by borrowing it from external sources, such as other brokers or other customers. Later . . . the customer 'covers' the short by buying identical stock and restoring it to the broker-lender. If the stock price declines, as the customer

goes to the heart of several of the elements (*i.e.*, reliance, causation and damages) of Plaintiffs' claims.

This fraudulent disinformation scheme against Biovail was led by the S.A.C. Group ("S.A.C."), a group of hedge funds controlled by non-party Steven A. Cohen, which profits from the short sales of Biovail stock. As one element of the scheme, S.A.C. enlisted purportedly independent stock analysts, including respondents Gradient Analytics Inc. formerly known as Camelback Research Alliance, Inc. (referred to herein as "Gradient") and its employees, respondents James Carr Bettis ("Bettis"), Craig Riebe ("Riebe"), Zachery Shannon ("Shannon"), Donn Vickrey ("Vickrey"), Scott Vorhauer ("Vorhauer"), and Brian Wright ("Wright") (collectively, the "Respondents"), to 'ghost write' negative and false analyst reports concerning Biovail's business and stock price. These reports were referred to internally by certain Gradient employees as "hatchet jobs." Respondents Helios Equity Fund ("Helios") and Pinnacle Investment Advisors, LLC ("Pinnacle") are also involved in this conspiracy because Bettis and Riebe managed these hedge funds from Gradient's office and these funds traded in the very stocks Gradient covered in its reports without any disclosure of the conflict. Upon S.A.C.'s request, Gradient timed the release of this false, negative information about Biovail so as to allow S.A.C. and other members of this conspiracy to establish short positions in Biovail's stock in anticipation of the release of these reports. *Id.* ¶ 83; *See also* Transcript of CBS News' 60 Minutes Special entitled "Betting on a Fall" dated March 26, 2006 attached hereto as Exhibit "C" and Congressional testimony of Marc. E. Kasowitz and Demitrios Anifantis attached hereto as Exhibit "D."

Significantly, the Respondents' dissemination of false information about Biovail occurred during the same time period that the Plaintiffs, putative class members in the

---

hopes, the customer can purchase the stock at a lower price than the one at which she sold the borrowed stock, profiting from the difference between the sale and purchase price." *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 700 (2d Cir. 1998).

New York action, allegedly suffered losses, *i.e.,* February 7, 2003 through March 2, 2004 – the putative class period (the "Class Period"). Thus, evidence of Respondents' hatchet jobs are highly relevant to Biovail's defense of this action as it will tend to show that decreases in the price of Biovail's stock during the Class Period were not caused by Biovail's alleged public misrepresentations or omissions (as Plaintiffs claim) but instead from the activities of the conspiracy lead by S.A.C., with the participation of the Respondents. The materials sought in the Arizona Subpoenas are also relevant to how widely the conspiracy disseminated its disinformation and, thus, whether Plaintiffs could have, in light of the disinformation spread by the conspiracy, relied on Biovail's alleged misstatements related to investing in Biovail.

This conspiracy to drive down the price of Biovail stock is also currently the subject of a lawsuit in New Jersey state court brought by Biovail, entitled *Biovail Corp. et al. v. S.A.C. Capital Management, LLC, et al.*, No. ESX L-001583 06 (N.J. Super. Ct., Essex Cty.) subsequently removed to United States District Court for the District of New Jersey where it bears docket number 06-CV-01625 (the "New Jersey Action"). A true and correct copy of the complaint in the New Jersey Action is attached hereto as Exhibit "E."[3]

Biovail's Arizona Subpoenas, directed at the Respondents here, seek materials about the scheme to depress the price of Biovail's stock and specifically relate to Respondents' communications with conspiracy members, and purported efforts to compile and distribute false "independent" stock analyses. To that end, Biovail seeks materials concerning the distribution of false information about Biovail through analyst reports issued by Gradient. Biovail also seeks materials pertaining to the Respondents'

---

[3] This conspiracy has also given rise to a separate securities fraud action on behalf of Biovail's shareholders, which is now pending in the United States District Court for the District of New Jersey. *See Del Giudice v. S.A.C. Capital Mgm't, LLC*, No 06-CV-01413 (D.N.J.). Biovail is not a party to that action.

communications with the S.A.C., the hedge fund who requested the reports on Biovail, and the Gerson Lehrman Group, who Biovail alleges, procured (and paid) various doctors to make false statements in the financial press about Biovail's products, particularly, Cardizem LA, a drug sold by Biovail that was launched during the Class Period and which is a subject of Plaintiffs' claims in the New York Action. Generally speaking, the Arizona Subpoenas can be summarized as follows:

- Documents concerning Biovail, including "draft or final versions of research reports, analyst reports or bulletins." (Ex. A, Request Nos. 1, 15);
- Documents concerning Cardizem LA, including documents related to articles published in *The Wall Street Journal* and *Barron's* in which doctors, including non-party Dr. Goldberg, made false allegations about Cardizem LA and a testing program for Cardizem LA that was established by Biovail, known as Proving LA through Clinical Experience ("PLACE") (*id.*, Request Nos. 2-4);
- Recordings of telephone calls, voicemails or voicemail blasts concerning Biovail (*id.*, Request No. 5);
- Client lists and records (*id.*, Request Nos. 6, 16);
- Documents concerning communications with individuals and entities also participating in the conspiracy to depress the price of Biovail's stock (*id.*, Request Nos. 7-8, 10-14); and
- Documents concerning statements made to members of the media or "any federal or state regulatory or law enforcement agency." (*Id.*, Request No. 9)

As set forth in more detail below, given the relevance of the materials sought by the subpoenas served on the Respondents, Biovail's Motion to Compel Respondents to Produce Documents Responsive to the Subpoena Requests and related Motion for Expedited Briefing and Oral Argument should be granted.

## II. FACTUAL BACKGROUND.

### A. This Action

Biovail is a specialty pharmaceutical company engaged in the formulation, clinical testing, registration, manufacture, and commercialization of pharmaceutical products utilizing advanced drug-delivery technologies. Its products include, among others, Cardizem LA and Wellbutrin XL. The other defendants in this action are executives of Biovail. Plaintiffs filed the Consolidated Amended Class Action Complaint in this action on or about June 18, 2004. *See* Exhibit "B."

In it, Plaintiffs, on behalf of a putative class of "persons and entities who purchased the publicly traded common stock of Biovail . . . during the period February 7, 2003 through March 2, 2004" allege, *inter alia*, that Defendants violated section 10(b) of the Securities Exchange Act of 1934 and the rules promulgated thereunder through the issuance of "false and misleading" press releases and projections for the sales of Cardizem LA that painted a rosier picture of Biovail's business than was warranted by the actual facts. Plaintiffs' claim that Defendants' statements resulted in members of the putative class purchasing shares in Biovail at inflated prices. They further allege that when the true facts of Biovail's business became known, the price of its stock dropped dramatically.

In order to prevail at trial, Plaintiffs must prove, among other things: (1) that press releases and projections issued by Biovail contained material misstatements or omissions; (2) that they relied on these misrepresentations or omissions in purchasing Biovail stock; (3) that these alleged misrepresentations or omissions proximately caused the damages they assert; and (4) the amount of damages, if any, they incurred as a result of Biovail's alleged misstatements. Although the burden of proof lies with Plaintiffs in this action, Biovail will present evidence at trial that it did not make material misstatements, that Plaintiffs did not rely on such alleged misstatements, and that any

damages claimed by Plaintiffs were caused by other factors. In particular, Biovail plans to show S.A.C. and others engaged in market manipulation with the aid of the Respondents to further S.A.C.'s short sales of Biovail's stock. The documents Biovail seeks pursuant to the Arizona Subpoenas are critical in preparing these defenses. These documents are also relevant to Defendants' opposition to Plaintiffs' Motion for Class Certification, as well as to potential contribution claims against certain third-parties.

### B. The New Jersey Action

The facts and allegations underlying the New Jersey Action also form the basis for Biovail's defenses in the New York Action and may also serve as a basis for Defendants' opposition to class certification in this action. In the New Jersey Action, Biovail alleges that S.A.C., with the participation of the Respondents here and the Gerson Lehrman Group, orchestrated a multi-pronged scheme to depress the price of shares of Biovail. (Ex. E ¶ 81) This scheme - which began at approximately the same time as the start of the Class Period – was possible (and succeeded) because the S.A.C. Group controls at least $7 billion worth of capital and, therefore, a significant portion of the business done on the New York Stock Exchange and the NASDAQ. (*Id.* ¶¶ 4, 44-45, 82).[4]

Respondents Bettis and Vickrey attempted to exploit the emerging market of third party boutique firms claiming to provide purportedly "independent" stock analysis for a fee by forming, owning, and operating respondent Gradient. Relevant to this Motion to Compel, S.A.C. Group retained Respondent Gradient to "'ghost write' negative and false analyst reports concerning Biovail's stock." (*Id.* ¶ 7; Ex. C) Specifically, Bettis and Vickrey promoted Gradient as, among other things, an "independent research firm providing both analyst-written research work and quantitative stock ratings for institutional clients." *See* http://www.gradientanalytics.com/aboutus.php

---

[4] Biovail was not the only company targeted by this conspiracy. Other companies attacked include: Celegene, Cardinal Healthcare, and Biolase. *See also Overstock.com, Inc. v. Gradient Analytics, Inc.*, No. CV053693 (Cal. Supp. Ct., Marin Cty.)

In particular, Respondents represented that their reports and analyses--which purported to focus on earnings and forensic accounting issues--were the work product of an experienced staff of C.P.A.s, C.F.A.s, M.B.A.s and PhDs, "reflect[ed] [their] judgment" and were completely independent and free from "bias." In reality, the reports were hardly the product of "independent," unbiased accounting or other analysis since the analysts behind the reports were contributing no meaningful analysis to the reports. *See* e.g. 60 Minutes, Ex. D. Rather, S.A.C. both controlled the content and timed the release of those reports so as to maximize the reports' furtherance of the scheme and their profits. (*Id.* ¶¶ 8-9, 11, 41, 48, 56, 82-83)

Respondents' "purported conclusions lacked any reasonable or factual basis . . . or any research, let alone independent unbiased research, but [were] instead based on a series of grossly distorted and materially misleading factual assertions and opinions made for the sole purpose of advancing S.A.C.'s market manipulation objectives." (*Id.* ¶ 85)[5] Biovail was never asked to comment on, explain, or clarify any of the concerns or uncertainties frequently raised in the reports. S.A.C.'s ability to time the release of false, negative information it purchased from Respondents about Biovail allowed members of this conspiracy to establish short positions in Biovail's stock in anticipation of the release of these reports. (*Id.* ¶ 83; Ex. C). The Respondents here were instrumental in distributing the negative information about Biovail which allowed the Respondents and members of the conspiracy to profit. Further, Bettis and Vickrey and their hedge funds profited by trading on the information released in the Gradient reports.

---

[5] *See also Id.* ¶¶ 91 (discussing a July 11, 2003 Gradient report); 99-100 (discussing a July 31, 2003 Gradient report); 101-02 (discussing a September 16, 2003 Gradient report, which was held by Gradient until its release was directed by S.A.C.); 125-127 (discussing a October 30, 2003 Gradient report and a subsequent meeting between representatives of S.A.C. and Gradient)

The foregoing activities by Respondents and the other conspiracy members, continued throughout the Class Period. (*See*, *e.g.*, Ex. E. ¶¶ 130-32, 136-40) The end result was to inflict "enormous financial harm on investors in [Biovail] who collectively lost many billions of dollars as a direct consequence of this stock manipulation scheme – billions of dollars lost to the [S.A.C. Group and other defendants in the New Jersey Action] who reaped correspondingly enormous profits at the expense of those innocent investors." (*Id.* ¶42, ¶51)

### C. The Subpoenas and the Non-Parties Objections

The subject subpoenas served on Respondents seek the production of materials concerning the conspiracy to depress the price of Biovail's stock, and the individuals and entities alleged in the New Jersey Action and the New York Action to have played a role in this conspiracy. Respondents objected to the Arizona Subpoenas on several grounds, including that they: (1) sought evidence that is not relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence; (2) sought materials that contain "confidential or proprietary commercial or other business information;" (3) were overly broad and unduly burdensome; (4) were an impermissible attempt to obtain discovery for use in the New Jersey Action; and (5) violate the Arizona Media Subpoena Law codified at A.R.S. § 12-224. However, the Respondents have not provided Biovail with any information to detail the nature of the undue burden that they claim or substantiated their claims of confidentiality. Moreover, counsel for Respondents has rejected Biovail's offers to narrow the scope of the requests in the Arizona Subpoenas or to stipulate to a protective order. Respondents have refused to produce any responsive materials.

Respondents also objected to the Arizona Subpoenas on the basis that a Protective Order currently in place in the New York Action prevents Respondents from producing materials which could potentially be used in the New Jersey Action. However, as third

parties to the New York Action, Respondents are not parties to the Protective Order and, therefore, have no standing to refuse to produce documents on that basis. Further, to the extent that the Court believes that the Protective Order prevents the use of non-confidential, non-party documents in the New Jersey Action, Biovail informs the Court that the parties to this action recently filed a Motion to modify paragraph 7 of the Stipulated Protective Order to read as follows (with changes to the text highlighted):

> 7.   Documents, testimony or information obtained through discovery in this Action, including but not limited to Confidential Information, may be used or disclosed solely for the prosecution or defense of this action **or the action styled Biovail Corp. et al. v. S.A.C. Capital Mgm't, LLC et al., No. ESX L-001583-06 (N.J. Super. Ct., Essex Cty.), which has been removed to the United States District Court for the District of New Jersey and bears docket number 06-CV-01625.**

This change is intended to clarify that documents produced in this action may be used in the New Jersey Action, subject to the remaining provisions of the Protective Order. The claims in the New Jersey Action are, as noted earlier, closely related to some of the defenses asserted in the securities class action at bar. When the parties to this action originally negotiated the Protective Order, it was simply not contemplated that a separate, but closely related, action would be brought in New Jersey in which Biovail would be represented by separate counsel. There is no reason to believe that the Court in the New York Action will refuse to modify the Protective Order - if modification is needed - to allow documents produced in that action to be used in the New Jersey Action. Moreover, counsel for Biovail has informed Respondents that notwithstanding the pending motion, Biovail will limit its use of any documents produced by Respondents to the present action. *See* correspondence dated June 14, 2006 from J. Speisman to K. Sundlof attached hereto as Exhibit "F." However, Respondents still will not produce responsive documents.

## III. ARGUMENT

The Federal Rules of Civil Procedure provide for broad discovery "regarding any matter, not privileged that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This standard applies to both parties and non-parties, such as Respondents. *See Int'l Brotherhood of Teamsters v. Eastern Conf. of Teamsters*, 162 F.R.D. 25, 28-29 (S.D.N.Y. 1995). Moreover, although Defendants must "meet the initial burden of showing that the documents [they] seek[ ] are relevant and necessary to this action . . . relevancy in this context is to be construed liberally and is not limited to the precise issues presented by the pleadings." *Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992) (citation omitted). The discovery sought from the Respondents falls squarely within the scope established by Federal Rule of Civil Procedure 26 as it is directly relevant to at least four issues in the instant matter, including whether (i) plaintiffs relied on Biovail's public statements when purchasing Biovail stock; (ii) a fraud perpetrated by a short-seller conspiracy, including Respondents, caused all or part of plaintiffs' damages; (iii) members of the short-seller conspiracy, including Respondents, are liable to Biovail for contribution under the Private Securities Litigation Reform Act's ("PSLRA") proportionate liability provisions; and (iv) plaintiffs are entitled to certify a class.

The discovery sought from the Respondents is relevant to whether or not Plaintiffs in this action relied on the misstatements they allege in deciding to purchase Biovail stock and whether these alleged misstatements were the proximate cause of the damages for which they now seek to recover. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ("relevance construed broadly to encompass any matter that bears on or could reasonably lead to other matter that could bear on, any issue that is

or may be in the case"); *First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 366 (S.D.N.Y. 1997) (finding subpoena requesting broad range of documents proper based on the scope of issues raised in litigation). Here, in order for Plaintiffs to recover on a cause of action for a violation of 10(b) of the Securities Exchange Act of 1934 and the regulations promulgated thereunder, they must prove at trial that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's actions caused him injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir. 1985).[6] Thus, at trial, Plaintiffs here must ultimately prove that "the economic harm that it suffered occurred as a result of the alleged misrepresentations." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992); *see also Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) ("This Court's cases . . . require both that the loss be foreseeable *and* that the loss be caused by the materialization of the concealed risk." (emphasis supplied); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("[I]n addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendants must also show that the misstatements were the reason the transaction turned out to be a losing one.").

Where the relationship between the loss suffered by a plaintiff and a defendant's alleged concealment or misstatement is not sufficiently direct, loss causation has not been established. *See Lentell*, 396 F.3d at 174. The materials sought from the Respondents are relevant to Defendants' defense of this action because they go to whether other

---

[6] As this action is pending in the Southern District of New York, the law of the Second Circuit applies to plaintiff's claims. *See also McCormick v. The Fund Am. Co.*, 26 F.3d 869, 875 (9th Cir. 1994) ("To make out Rule 10b-5 claim, plaintiff must show that there has been misstatement or omission of material fact, made with scienter, which proximately caused his or her injury.") (citing *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir.), *cert. dismissed*, 506 U.S. 948, 113 S.Ct. 399 (1992).

factors may have caused or contributed to the losses claimed by Plaintiffs in this action. (Ex. A., Requests Nos. 1-2, 5, 7-8, 10-12; *see also* Ex. E ¶ 13 (alleging that as a result of the conspiracy described in the New Jersey Action, the price of Biovail's stock decreased by over 50%))

The materials sought from Respondents are also relevant because the conspiracy alleged in the New Jersey Action could act as an independent and intervening event that severed any causal connection between Defendants' alleged misstatements and the loss claimed by Plaintiffs in this action. *See First Nationwide Bank*, 27 F.3d at 769 ("[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions."). Courts have held that the issue of whether an intervening cause severed the relationship between a plaintiff's loss and a defendant's purported misstatement is an issue that is subject to proof at trial. *See Lentell*, 396 F.3d at 161.

To the extent that any actions taken by Respondents caused or contributed to Defendants losses, the documents sought from Respondents are also relevant to Biovail's rights to contribution under the PSLRA's proportionate liability provisions or any rights Biovail may have to bring cross-claims. PSLRA, 15 U.S.C. 78u-4(f)

In addition to the foregoing, materials sought from this non-party may bear upon issues relevant to Defendants' opposition to class certification. For example, the existence and effect of this conspiracy may: (1) create conflicts within the putative class as currently alleged,[7] (2) expose defenses that are unique to the Lead Plaintiffs in this action, (3) establish that individual issues of causation and damages predominate over

---

[7] Biovail alleges that certain of the purportedly independent financial analysts named in the New Jersey action – including Respondent Gradient – also market their services to "develop securities class action law firms as clients," by offering their reports as "roadmaps for drafting class action complaints based on those manufactured stock drops . . ." and paid these defendants "lucrative expert witness and consulting fees to support their litigation positions in such suits." (Ex. E ¶ 62)

any common issues within the class, and (4) rebut the presumption of reliance afforded under the fraud-on-the-market theory. *See e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (affirming denial of class certification and holding "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") *Basic, Inc. v. Levinson*, 485 U.S. 224, 248 (1998) (holding that the fraud-on-the-market presumption of reliance is a rebuttable presumption). Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." (internal citations omitted); *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 357 (S.D.N.Y. 2004) ("A class representative subject to a unique defense may become so distracted that it would impair his representation or appearance of fair representation of the class as a whole. Its presence can bar a finding of adequacy, even if that defense would not ultimately defeat that particular class representative's claim."); *In re Genesis Intermedia Secs. Litig.*, 232 F.R.D. 321, 329-30 (D. Minn. 2005) (stating that media disclosures may subject class representatives to "unjustified reliance" defenses). This is one of the reasons that Biovail has subpoenaed client lists from the Arizona parties. (Ex. A, Request No. 6)

Moreover, in addition to permitting an assessment of whether Defendants' alleged misstatements or omissions caused the damages Plaintiffs claim, the requests seeking client lists and any communications with media organizations are particularly relevant to this inquiry, as they may demonstrate how widely negative information about Biovail was distributed to the market. (*Id.*, Nos. 6, 9) Similarly, materials concerning contacts with regulatory or government entities (*Id.*, No. 9) are relevant here because members of the conspiracy may have contacted the SEC, the Federal Bureau of Investigation or other

similar agencies to "further downward pressure on Biovail's stock." (Ex. E ¶¶ 119, 130-33)

The Arizona Subpoenas are not, contrary to the conclusory statements of the Respondents, unduly burdensome. Additionally, Respondents have not provided *any* explanation of how compliance with these subpoenas would *actually* be burdensome, let alone amount to an undue burden. Tellingly, counsel for Biovail has been willing to discuss narrowing the scope of the requests, but Respondents' lawyers rejected that offer.

Similarly, the Respondents' attempts to avoid production on grounds that the materials sought contain "confidential or proprietary commercial or other business information" must be rejected. It is insufficient in responding to a subpoena to rely on a bare allegation of competitive harm. *See Quotron Sys., Inc.*, 141 F.R.D. at 41. Rather, in order to maintain this objection, the Respondents must present *specific* evidence of the harm they would incur if disclosure is required here. *Id.* They have not done so and, therefore, their objections on this ground must be rejected. Moreover, any potential harm, if shown, can be ameliorated by a carefully crafted protective order which counsel for Biovail suggested but which Respondents' counsel rejected.

Moreover, the Respondents' attempts to avoid production on grounds that the materials sought are protected by the Arizona Media Law codified at A.R.S. §12-2214 must be rejected. Specifically, the Arizona Media Law provides as follows:

> a subpoena for the attendance of a witness or for production of documentary evidence issued in a civil or criminal proceeding and ***directed to a person engaged in gathering, reporting, writing, editing, publishing or broadcasting news to the public, and which relates to matters within these news activities, shall have attached to it an affidavit of a person with a direct interest*** in the matters sought which states all of the following:
>
> (1) each item of documentary and evidentiary information sought from the person subpoenaed.

    (2) that the affiant or his representative has attempted to obtain each item of information from all other available sources, specifying which items of information the affiant has been unable to obtain.
    (3) the identity of the other sources from which the affiant or his representative has attempted to obtain the information.
    (4) that the information sought is relevant and material to the affiant's cause of action or defense.
    (5) that the information sought is not protected by any lawful privilege.
    (6) that the subpoena is not intended to interfere with the gathering, writing, editing, publishing, broadcasting and disseminating of news to the public as protected by the First Amendment, Constitution of the United States, or by Article II, Section 6, Constitution of Arizona.

A.R.S. §12-2214 (emphasis supplied). Traditionally, the statute has been narrowly applied to protect "person[s] engaged in the gathering, reporting, writing, editing, publishing or broadcasting news to the public" and is typically asserted in conjunction with the reporters'/journalists' privilege. *Matera v. Superior Court of the State of Arizona*, 170 Ariz. 446, 448, 825 P.2d 971, 973 (App. 1992) (finding the trial court correctly focused on this language in denying the motion to quash the third party subpoena). Moreover, the *Matera* Court stated that "the statute should apply to members of the 'news media' as that term is commonly understood" and defined "news" as "a report of recent events; material reported in a newspaper or news periodical or on a newscast; matter that is newsworthy." *Id.* (citing Webster's Ninth New Collegiate Dictionary 796 (1984)). Here, the Respondents are independent stock analysts and research companies analyzing trends in the sales of securities and selling their reports and analyses to private parties for a fee, not journalists or news reporters.

  Finally, Biovail's requests for these documents by subpoenas in this action, are not, as suggested by the Respondents, improper if Biovail also uses these documents in the New Jersey Action. Biovail should be permitted to coordinate its defense of this

action with its prosecution of the New Jersey Action. Biovail should not be required to litigate two inextricably intertwined cases as if they were completely separate matters.

The original Protective Order was not intended to impose any such requirement and even if it were as third parties to the action, Respondents are not entitled to avail themselves of it. Furthermore, the proposed modification of the Stipulated Protective Order is warranted by case law because it would avoid unnecessary duplication of effort and expense for both Biovail and non-parties in this action and the New Jersey Action, and conserve the judicial resources of both this Court and the court hearing the New Jersey Action.

## IV.  CONCLUSION.

For the foregoing reasons, and for each of them, Biovail respectfully requests that the Court issue an Order compelling the parties to comply with Federal Rules of Civil Procedure Rules 45 and 37. Additionally, Biovail requests it be awarded its reasonable attorneys' fees and costs incurred in bringing this Motion.

DATED this 13th day of July, 2006.

GREENBERG TRAURIG, LLP

By:       /s/ Juliet L. Speisman
E. Jeffrey Walsh
Juliet L. Speisman
*Attorneys for Biovail Corporation*

ORIGINAL of the foregoing filed with
the Clerk of the U.S. District Court
for the District of Arizona this 13th
day of July, 2006.

COPY of the foregoing mailed this 13th
day of July, 2006, to:

Kenneth C. Sundlof, Jr.
sundlof@jsslaw.com
Jimmie W. Pursell, Jr.
jpursell@jsslaw.com
JENNINGS, STROUSS & SALMON, P.C.
11th Floor
201 East Washington Street
Phoenix, AZ  85004-2385
*Attorneys for Respondents*

      /s/ Patricia Berger

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000